UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ VELARDE,<br><br>    Plaintiff,<br><br>v.<br><br>DMV,<br><br>    Defendant. | Case No. 18-cv-03749-HSG<br><br>**ORDER ON SUMMARY JUDGMENT MOTION**<br><br>Re: Dkt. No. 54 |

Pending before the Court is Defendant Department of Motor Vehicles' ("DMV") Motion for Summary Judgment. Dkt. No. 54 ("Mot."), 55 ("Opp."), 56 ("Reply"). For the reasons provided below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## I. BACKGROUND

Plaintiff Luz Velarde began working for DMV on May 14, 2018, and is currently employed there as a Senior Motor Vehicle Technician. *See* Dkt. No. 54-3 at 105 (Ex. 10). On August 5, 2015, Plaintiff contacted the U.S. Equal Employment Opportunity Commission ("EEOC") to complain about alleged discrimination at her workplace. *Id.* at 46 (Ex. 3). She officially filed a charge of discrimination based on race (Hispanic) and national origin (Mexican) on November 2, 2015. *Id.* at 47.

Plaintiff declares that in April 2013, her former supervisor, Carrie Stanton took Plaintiff to a back room and told Plaintiff that "she didn't like [her] kind" and "[y]our – your kind is the worst." *See* Dkt. No. 55-2 at 47:14–16. She also instructed Plaintiff that "[she] [did]n't want [Plaintiff] speaking Spanish in the office." *Id*. at 47:16–22. Plaintiff also states that Stanton took several discriminatory actions against her. First, Stanton deprived Plaintiff and other employees of overtime pay by either requiring that they remove the extra time from their time sheets or removing it herself. Dkt. No. 54-3 at 106:19–107:16 (Ex. 3). Second, Stanton failed to submit

Plaintiff's insurance paperwork, *see* Dkt. No. 54-3 at 149:6–151:25, and would call Plaintiff's medical providers to cancel physical therapy appointments without Plaintiff's knowledge, Dkt. No 56-1 at 163:13–17. Third, Stanton manipulated Plaintiff's schedule such that Plaintiff could be found absent without leave ("AWOL") by approving vacation time for a shorter amount of time than she initially claimed. Dkt. No. 54-3 at 105 (Ex. 10). Specifically, Plaintiff alleges that Stanton initially approved Plaintiff's vacation from June 29, 2015 to July 17, 2015, but later claimed that it was approved only from July 6, 2015 to July 17, 2015. *Id.* Plaintiff received a letter from Stanton with an AWOL notice dated June 30, 2015, which Plaintiff was able to address because she was alerted to Stanton's "trap" by a coworker. *Id.*

Plaintiff also includes actions taken in 2016 as the basis of her allegations against DMV. On March 24, 2016, while Plaintiff was on workers' compensation leave, DMV sent Plaintiff a letter acknowledging the work restrictions and requiring her to return to work for modified duty on March 28, 2016. *See* Dkt. No. 54-3 at 88 (Ex. 6). Plaintiff states that she never received this letter, and thus did not know she needed to appear for work by March 28, 2016. Dkt. No. 55-1 at 3. DMV sent an additional letter on April 13, 2016 notifying Plaintiff that "effective April 27, 2016, the Department of Motor Vehicles intends to invoke . . . the AWOL statute . . . because [Plaintiff] [had] been AWOL more than five (5) consecutive working days." Dkt. No. 54-3 at 90 (Ex. 7). Plaintiff then challenged the termination decision with the California Department of Human Resources ("Cal HR"). *See* Dkt. No. 54-3 at 92–98 (Ex. 8). Because DMV's counsel failed to appear at the hearing, the Administrative Law Judge ordered Plaintiff reinstated to her position. *Id.* at 97. Plaintiff supplemented her EEOC complaint with two letters dated May 16, 2016 and August 10, 2016, *see* Dkt. Nos. 55-1 at Ex. C & D, which included additional detail about Plaintiff's 2016 allegations, but did not file a new EEOC charge of discrimination based on the 2016 AWOL decision. Plaintiff returned to work in July 2017. Dkt. No. 54-3 at 37:11–14 (Ex. 3).

Defendant "denie[d] engaging in discriminatory and retaliatory practices against [Plaintiff] based on her national origin (Mexican) and race (Hispanic)." Dkt. No. 54-3 at 49 (Ex. 4). After reviewing the complaint, the EEOC closed its investigation on March 27, 2018, "unable to

conclude that the [i]nformation obtained establishe[d] violations of the statutes." Dkt. No. 54-3 at 86 (Ex. 5). Thereafter, Plaintiff filed this employment discrimination suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, on June 25, 2018, against Defendants DMV and Carrie Stanton. *See* Dkt. No. 1. Plaintiff filed an Amended Complaint on July 11, 2018, Dkt. No. 6, and the Court granted the parties' joint stipulation to dismiss Defendant Stanton on January 23, 2019, Dkt. No. 35. The Court held a hearing on the motion on January 9, 2020. Dkt. No. 57.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence

3

1 supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## III. ANALYSIS

Defendant raises two primary arguments in support of its request for summary judgment. *See generally* Mot. First, Plaintiff failed to timely exhaust administrative remedies because none of the alleged employment actions occurred within 180 days of Plaintiff's complaint to the EEOC. *Id.* at 12–14; *see generally* Reply. Second, Plaintiff cannot establish a prima facie case of discrimination because she fails to establish an adverse employment action and fails to establish a discriminatory motive for any employment action. Mot. at 14–16. The Court addresses each argument in turn.

### A. Timeliness

Title VII requires that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5. While "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, [it is] a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Each discrete act must adhere to this requirement: "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Nat'l R.R. Passenger Corp. v.*

4

*Morgan*, 536 U.S. 101, 112 (2002).

Defendant argues that since Plaintiff filed her charge of discrimination with the EEOC on November 2, 2015, her charge can only cover employment actions that occurred on or after May 6, 2015. Reply at 1. Because Plaintiff stated at her deposition that many of the alleged employment actions occurred in 2013 and 2014, Defendant argues that claims based on those actions are time barred. Mot. at 12–14. Defendant further argues that Plaintiff's declaration attached to the Opposition is a sham declaration since it contains conclusory statements that "the latest incident occur[ed] in approximately May or June 2015," which directly conflicts with Plaintiff's deposition testimony. Reply at 1–3 (citing Dkt. No. 55-1 at 2). The Court agrees with Defendant as to some of the alleged employment actions.

Plaintiff admitted in her deposition that many of the alleged employment actions took place before 2015.[1] Specifically, Plaintiff stated that the overtime pay issues occurred in 2013–2014. *See* Dkt. No. 54-3 at 104:10–18 (Ex. 3) (stating that overtime issues occurred in 2013–2014, but not afterwards). Similarly, Plaintiff stated that Stanton did not submit her insurance paperwork in 2013, *id.* at 151:4–25, and that Stanton cancelled her physical therapy appointments in 2014, Dkt. No 56-1 at 163:13–17. Thus, according to Plaintiff's deposition testimony, none of these actions occurred within the statutory period of 180 days. However, the declaration attached to Plaintiff's opposition brief tells a different story. Plaintiff does reiterate that Stanton refused to submit insurance paperwork "from approximately August 2013 through August 2014," but as to the overtime pay action and the cancelled physical therapy appointments, Plaintiff now includes allegations that "the latest incident occur[ed] in approximately May or June 2015," with no further details. Dkt. No. 55-1 at 2.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)). "This

---

[1] This includes Stanton's statements referring to "your kind." *See* Dkt. No. 54-3 at 64:3–65:24. However, these statements may be considered as background evidence to establish discriminatory intent. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 122 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

5

sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' which 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). Here, to show timeliness, Plaintiff relies solely on her statements that incidents occurred in May or June 2015, but fails to include any additional detail despite admitting in her deposition that such conduct occurred only between 2013 and 2014.[2] This "inconsistency between [Plaintiff's] deposition testimony and subsequent affidavit . . . clear[ly] and unambiguous[ly] justif[ies] striking [part of] the affidavit." *Van Asdale*, 577 F.3d at 998–99. The Court thus will not credit the contradictory declaration.

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to the overtime pay, insurance, and cancelled physical therapy actions, finding those claims time-barred. Plaintiff's conclusory statements in the Opposition declaration cannot create an issue of fact as to the timeliness issue. Still, Plaintiff's claims as to Defendant's June 30, 2015 AWOL notice and other actions taken in 2016 (including her termination) remain.

### B. Prima Facie Case

"In order to prevail in a Title VII case, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634,

---

[2] Plaintiff also makes a new allegation about Stanton with no supporting evidence: "On about twenty occasions she refused to accommodate my work restrictions recommended by my physician and physical therapists. [Stanton's] interference with my recovery efforts and recommended modified duties occurred in 2014 and 2015, with the latest incident occurring in approximately May or June 2015." Dkt. No. 55-1 at 2. Plaintiff made no such charge to the EEOC, and did not raise this allegation during discovery or prior to mentioning it in the declaration. The declaration further includes no details as to the type of purported interference. Accordingly, the Court disregards this alleged action. *See McKinney v. Am. Airlines, Inc.*, 641 F. Supp. 2d 962, 982 (C.D. Cal. 2009) ("Unless a plaintiff includes allegations in her complaint or informs the defendant before the close of discovery of her intent to rely on previously undisclosed allegations, she may not assert them for the first time in opposing summary judgment.") (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–94 (9th Cir. 2000)).

6

640 (9th Cir. 2003), *as amended* (Jan. 2, 2004). To establish a prima facie case, a plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas Corp. v. Green* [411 U.S. 792 (1973)] or with direct or circumstantial evidence of discriminatory intent." *Id.* (quoting T*exas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Under the *McDonnell Douglas* framework, a plaintiff must establish that "(1) the plaintiff belongs to a protected class, (2) [s]he was performing according to h[er] employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017).

Defendant argues that the 2015 AWOL notice did not constitute an adverse employment action. Mot. at 14–16. Plaintiff responds that Stanton's comments are direct and circumstantial evidence of discrimination and the Court need not reach the *McDonnell Douglas* analysis. Opp. at 9–10. While the Court agrees that these comments create a triable issue as to Defendant's discriminatory intent so that it need not reach the *McDonnell Douglas* analysis, this does not relieve Plaintiff of the requirement of showing an adverse employment action. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977) (explaining that the *McDonnell Douglas* analysis derived from the "general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that *an employment decision* was based on a discriminatory criterion . . . .") (emphasis added). Thus, even where there is direct evidence of discriminatory intent, a plaintiff must establish that an adverse employment action occurred. The Court finds that Plaintiff fails to establish any triable issue of fact as to whether the 2015 AWOL notice constituted an adverse employment action. "[A]n adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000)). California Government Code § 19996.2 provides that "Absence without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service, as of

7

the last date on which the employee worked." Here, without dispute, Defendant sent only a notice of AWOL on June 30, 2015 after Plaintiff's first purported absence on June 29, 2015, notifying her that if she continued to be absent, AWOL status would commence by July 3, 2015. *See* Dkt. No. 55-1, Ex. A. Before that date, however, Plaintiff addressed the situation. *See* Dkt. No. 55-1 at 2–3 (Plaintiff stated that once she became aware of the notice, "[she] was able to address the situation."). While Plaintiff alleges that Stanton tried to trick her by sending the notice while she was scheduled to be on an approved vacation out of the country, she acknowledges that Defendant never succeeded in implementing the AWOL determination. *Id.* Nor does Plaintiff explain how the never-implemented AWOL determination materially affected any term, condition or privilege of employment. The case law requires a material change to establish an adverse employment action, and the undisputed record reflects that no such change occurred here. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to the 2015 AWOL notice for failure to establish an adverse employment action.

Plaintiff has, however, shown a triable issue of fact as to whether the alleged 2016 actions constituted an adverse employment action. Defendant notified Plaintiff that effective April 27, 2016, it intended to invoke AWOL status due to her consecutive absences. Dkt. No. 54-3, Ex. 7. Because Plaintiff did not respond or appear for work after this notice, she was automatically resigned effective March 25, 2016, the last day she worked or was purportedly on approved leave. *Id.* Plaintiff alleges that during this time she was on approved workers' compensation leave and thus was not absent, that she never received Defendant's letter, and that she believes the letter was returned to Defendant as undeliverable. Dkt. No. 55-1 at 3. Taking Plaintiff's version of the events as true and making all reasonable inferences in her favor, as the Court must at this stage, she establishes a genuine issue of fact as to whether she was terminated as a result of Stanton's discriminatory intent, and termination is an adverse employment action.[3]

---

[3] Defendant's argument that Plaintiff was later reinstated after the 2016 AWOL separation does not persuade the Court otherwise. *See* Mot. at 16. Plaintiff's reinstatement was effective as of March 25, 2016 "with no break in service," but Defendant was only required to provide "back pay and benefits from June 14, 2016" onwards. Dkt. No. 54-3 at 97 (Ex. 8). Because Plaintiff did not receive backpay or benefits for an almost three-month period while she appealed the 2016 AWOL separation, there is a genuine issue of fact as to whether this circumstance amounted to an adverse

8

However, the question remains whether Plaintiff properly exhausted administrative procedures for the 2016 actions, given that the EEOC action was filed in 2015. Defendant argues that "the AWOL separation in 2016 that was ultimately withdrawn by Cal HR . . . was never the subject of an EEOC charge." Mot. at 11. While this is technically correct, Plaintiff argues that the two letters sent on May 16, 2016 and August 10, 2016 supplemented her charge such that the actions are part of the EEOC action. Opp. at 7–8. The question then is whether these letters may be properly considered as part of the "charge." The Supreme Court has held that courts must look at whether the filing contains "the information required by the regulations, i.e., an allegation and the name of the charged party," and whether it can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).

Plaintiff cites *Edelman v. Lynchburg College* to argue that the letters submitted here should constitute part of the charge. 300 F.3d 400, 404 (4th Cir. 2002). In *Edelman*, the court found an unverified letter from an employee constituted a charge. *Id.* The contents of the *Edelman* letter were, however, quite explicit as to their purpose: "I believe my case is one of gender-based employment discrimination, exacerbated by discrimination on the basis of my family's national origin and religion . . . I hereby file a charge of employment discrimination against [defendant] . . . and I call upon the EEOC to investigate this case . . . ." 300 F.3d at 402. Additionally, the EEOC responded to the letter informing plaintiff "that the information in the November 14 letter was 'not sufficient for [the EEOC] to continue investigating [the] case,' and requesting that he arrange an interview." *Id.* at 403.

The facts in this case are not as strong as those in *Edelman*. While Plaintiff sent additional letters to the EEOC, the letters did not explicitly note that Plaintiff intended to file an additional charge due to the 2016 actions and the EEOC never acknowledged receipt of the letters. The letters simply provided updates as Plaintiff's situation unfolded. They did not mention the racial

---

employment action.

9

discrimination charge explicitly, but rather stated that Plaintiff is looking for the EEOC to "hurry with the investigation of Carrie Stanton." Dkt. No. 55-1 at 13 (Ex. D).

While Plaintiff's letters do not reach the level of detail provided in *Edelman*, the Court finds they (barely) sufficiently stated a charge. The Ninth Circuit has articulated a standard lower than requiring any sort of official filing for pro se litigants. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002)) (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975)) ("We construe the language of EEOC charges 'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'"). Here, Plaintiff was pro se and likely reasonably believed that by supplementing her filing with additional updates, they would be included as alleged discriminatory actions. The letters were also sent well before the EEOC completed its investigation in 2018. To determine whether Plaintiff has exhausted allegations not specifically noted in her administrative charge, the Court should "consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Id.*

The further developments noted in Plaintiff's additional letters are related to Plaintiff's 2015 allegations that Defendant continued to take discriminatory actions to remove Plaintiff. Additionally, the letters include the date of the additional discriminatory acts, detail the same perpetrator of the alleged discrimination (Stanton), and detail similar actions to terminate Plaintiff from her position, and at least one letter specifically identifies the case number of Plaintiff's official charge. Although a close call, the Court finds the letters sufficiently state a charge given Plaintiff's pro se status, the direct relationship between the 2016 actions and the theory of discrimination presented in Plaintiff EEOC charge, and the majority of other factors weighing in favor of exhaustion.

Finally, as noted above, the Court finds that a triable issue of fact exists as to Defendant's

United States District Court
Northern District of California

discriminatory intent. Plaintiff alleges that all actions taken by Defendant stem from bias against Spanish-speaking employees, and points to Stanton's statements in 2013 as the clearest example of such intent. While Defendant argues that Stanton's use of "your kind" is not clearly targeted at Spanish-speaking employees, Mot. at 9, determining the meaning of such remarks is left to the jury at trial, rather than to the Court on a motion for summary judgment. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) ("The speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage."). Additionally, the Court may consider the alleged statements as background evidence of discriminatory intent, even though they predate the alleged conduct. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 122..

## IV. CONCLUSION

Because Plaintiff has shown triable issues of fact as to whether the 2016 actions were an adverse employment event, and as to whether Defendant acted with discriminatory intent, the Court **DENIES** Defendant's motion for summary judgment as to the 2016 actions only. The motion for summary judgment is otherwise **GRANTED**.

**IT IS SO ORDERED.**

Dated: 2/4/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge